UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Timothy Rodgers,<br><br>    Plaintiff,<br><br>  v.<br><br>Town of Hempstead, Town of Hempstead Department of Occupational Resources, HempsteadWorks Career Center, Dr. Eric Charles Mallette (*in his Official and Individual Capacities*), and EAC, Inc.,<br><br>    Defendants. | 22-cv-5895 (NRM) (JMW)<br><br>**MEMORANDUM AND ORDER** |

NINA R. MORRISON, United States District Judge:

  Plaintiff Timothy Rodgers alleges that he was terminated from his employment in retaliation for speech protected by the First Amendment. He brings causes of action under 42 U.S.C. §§ 1983, 1985, and 1986, the First Amendment, and the Fourteenth Amendment against Defendants the Town of Hempstead, the Town of Hempstead Department of Occupational Resources, HempsteadWorks Career Center, Dr. Eric Charles Mallette, and EAC, Inc. Compl. at 1–2, ECF No. 1.[1] With their answer to Rodgers' complaint, the Town of Hempstead, the Town of Hempstead Department of Occupational Resources, HempsteadWorks Career Center, and Mallette (collectively "Town Defendants") assert cross-claims against EAC, Inc.

---

[1] Except pincites for deposition transcripts, all other pincites refer to page numbers generated by CM/ECF, and not the document's internal pagination.

1

("EAC"). Town Defendants' Answer and Cross-claims at 11–13, ECF No. 20. Town Defendants and EAC separately move for summary judgment. For the reasons that follow, the Court grants both motions for summary judgment.

## FACTUAL BACKGROUND

The following facts and procedural history are taken from Rodgers' complaint, the parties' Statements of Material Facts submitted with their motions for summary judgment in accordance with Local Civil Rule 56.1, and the underlying record.

The Town was awarded a Gun Violence Prevention Grant from New York State in September 2021, and the funds provided under the grant were intended to benefit youth that are or could be impacted by gun violence. Letter from N.Y. Dep't of Labor dated Apr. 21, 2022, ECF No. 40-7; Dep. Tr. dated July 20, 2023 for Kurt Rockensies ("Rockensies Tr.") 41:16–43:12, ECF No. 40-5; Dep. Tr. dated Aug. 22, 2023 for Tania Peterson-Chandler ("Chandler Tr.") 10:20–11:5; 18:5–14, ECF No. 40-6; Town Defendants' Rule 56.1 Statement of Material Facts ("Town Def. Rule 56.1 Statement") ¶¶ 22, 24, ECF No. 42. Nonprofit EAC, Inc. was already providing the Town's Department of Occupational Resources ("DOOR") with assistance related to two separate grants, and it ultimately was retained to assist the Town with the Gun Violence Prevention Grant. Town Def. Rule 56.1 Statement ¶¶ 2, 28–29; Rockensies Tr. 55:24–60:3. EAC's role was to hire two gun violence prevention coordinators to operate the grant and to ensure the grant met its goals. Town Def. Rule 56.1 Statement ¶ 29; Rockensies Tr. 31:3–11. Rodgers was one of the two coordinators hired by EAC. Town Def. Rule 56.1 Statement ¶ 34; Rockensies Tr. 35:10–19. EAC

hired the other coordinator two weeks prior. Town Def. Rule 56.1 Statement ¶ 43; Dep. Tr. dated June 23, 2023 for Timothy Rodgers ("Rodgers Tr.") 17:21–25, ECF No. 40-3. Once hired in November 2021, Rodgers became an employee of EAC and was supervised by two EAC employees. Town Def. Rule 56.1 Statement ¶¶ 35, 40, 43; Rockensies Tr. 31:3–15; Chandler Tr. 23:10–17; Signed Employment Offer for Timothy Rodgers at 2, ECF No. 40-10.

Rodgers understood that his employment with EAC was temporary and "at will" and would end in one year with the possibility of an extension. Town Def. Rule 56.1 Statement ¶¶ 46, 48; Rodgers Tr. 68:4–69:2, 76:2–13. In the summer of 2022, Rodgers' EAC supervisors advised him and the other coordinator that their positions would continue on a month-to-month basis. Town Def. Rule 56.1 Statement ¶ 63; Rodgers Tr. 226:2–17. In June 2022, both coordinators were advised that while the grant had been extended to March 2023, no additional funds were provided, and in August 2022, there would be a determination as to whether EAC could keep both coordinators, just one, or neither. Chandler Tr. 68:12–69:8; Town Def. Rule 56.1 Statement ¶ 65; *see also* Pl. Responses to Town Def. Rule 56.1 Statement ¶ 65, ECF No. 43-16 (stating Rodgers does not dispute Town Def. Rule 56.1 Statement ¶ 65).

A meeting was held on August 31, 2022 at 3:00pm via Zoom. Chandler Tr. 71:2–5; Declaration of Danielle Dilena ("Dilena Decl.") ¶ 14, ECF No. 47-6; EAC Rule 56.1 Statement of Material Facts ("EAC Rule 56.1 Statement") ¶ 38, ECF No. 47; Pl.

3

Responses to EAC Rule 56.1 Statement ¶ 36, ECF No. 50-14.[2]  On behalf of the Town, the meeting was attended by Kurt Rockensies, Deputy Commissioner of Occupational Resources and Fiscal Manager of the Town, and Dr. Eric Charles Mallette, who was the Commissioner of DOOR and administered all grants that went through DOOR. Dilena Decl. ¶ 14; Dep. Tr. dated July 18, 2023 of Eric C. Mallette ("Mallette Tr.") 11:16–12:8, ECF No. 40-4; Rockensies Tr. 10:7–17; Pl. Responses to EAC Rule 56.1 Statement ¶ 37 (stating Rodgers does not dispute that Rockensies and Mallette attended the August 31, 2022 meeting).  From EAC, four people, including Rodgers' EAC supervisor, attended the meeting.  Dilena Decl. ¶¶ 9, 14; EAC Rule 56.1 Statement ¶ 39; Pl. Responses to EAC Rule 56.1 Statement ¶ 37.

During that meeting, Rockensies advised that there was insufficient grant funding to continue employing both gun violence prevention coordinators.  Dilena Decl. ¶ 15; Rockensies Tr. 47:3–13.  EAC assessed that Rodgers should be terminated first, because he was hired after the other gun violence prevention coordinator. Dilena Decl. ¶ 15; Rockensies Tr. 47:14–48:7.[3]  It was decided that Danielle Dilena,

---

[2] Rodgers' submission at ECF No. 50-14 is titled "Plaintiff's Responses to Defendants' 56.1 Statement of Undisputed Facts" but appears to be almost entirely responsive to EAC's Rule 56.1 Statement (ECF No. 47).  Prior to EAC's filing of its motion for summary judgment, Rodgers previously submitted responses to the Town Defendants' Rule 56.1 Statement, and so the Court refers to Plaintiff's submission at ECF No. 50-14 as his responses to EAC's Rule 56.1 Statement.  Rodgers appears to have responded to a different version of EAC's Rule 56.1 Statement or otherwise modified EAC's statement, as the paragraph numbering in Rodgers' responses to EAC's Rule 56.1 Statement is different from the paragraph numbering in EAC's original statement.

[3] Rodgers disputes what occurred during the August 31, 2022 meeting arguing that "[t]here [was] no contemporaneous, written record of what took place."  *See* Pl.

Director of Vocational Services for EAC (Dilena Decl. ¶ 2) would inform Rodgers the next day (September 1, 2022) of the decision to eliminate his position due to insufficient Grant funds, and that September 30, 2022 would be his last day. Chandler Tr. 70:4–25; Rockensies Tr. 53:16–25; Pl. Responses to EAC Rule 56.1 Statement ¶¶ 41, 42 (stating Rodgers does not dispute that it was decided during the August 31, 2022 meeting that Dilena would inform Rodgers on September 1, 2022 that his last day would be September 30, 2022).

At 6:00pm on August 31, 2022, the Nassau County Redistricting Commission held a public hearing on redistricting. Rodgers Tr. 97:17–98:7;[4] Mallette Tr. 48:16–49:5; Pl. Responses to EAC Rule 56.1 Statement ¶ 46. Mallette served as a commissioner on the Redistricting Commission and was present at the August 31, 2022 hearing. Mallette Tr. 39:13–25; 48:16–49:12. Rodgers provided public comments at the hearing and expressed that there were only two people on the Commission that looked like him. Mallette Tr. 49:13–52:5; *see also* Compl. ¶¶ 38, 41. Rodgers alleges his comments were "an impassioned statement" that expressed a lack of confidence in the Commission. Compl. ¶¶ 39, 41.

---

Responses to Town Def. Rule 56.1 Statement ¶ 86. Rodgers, however, offers no evidence on what was discussed in the meeting that contradicts the declaration and deposition testimony in the record.

[4] These pages of Rodgers' deposition testimony transcript can be found in Exhibit B to Rodgers' first opposition submission following the Town Defendants' motion for summary judgment. Pl. Opp. to Town Def. Mot. for Summ. J ("Pl. Opp—Town"), ECF No. 43-3.

5

The next day, on September 1, 2022, Dilena and another EAC supervisor informed Rodgers that his employment would end on September 30, 2022. Rodgers Tr. 106:05–107:9; Pl. Responses to EAC Rule 56.1 Statement ¶ 69 (stating Rodgers does not dispute that Dilena and Esther Gonzalez so informed him on September 1, 2022). During that meeting, Rodgers was told that the other coordinator's position was being retained because she was hired before him. Rodgers Tr. 113:6–15.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). A fact is material "when its resolution 'might affect the outcome of the suit under the governing law.'" *SCW W. LLC v. Westport Ins. Corp.*, 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (ADS) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In considering a summary judgment motion, the Court "is required to view the record in the light most favorable to the party against which summary judgment is contemplated and to resolve all ambiguities and draw all factual inferences in favor of that party." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008).

"The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact." *Thorpe v. City of New York*, No. 19-CV-5995 (CM) (RWL), 2021 WL 3811238, at *4 (S.D.N.Y. Aug. 25, 2021) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). "Once such a showing has been made, the non-moving party must present 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). "The party opposing summary judgment 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). "Finally, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant." *Id.*

## DISCUSSION

Town Defendants move for summary judgment on the grounds that Rodgers (1) cannot establish a *prima facie* case of First Amendment retaliation, (2) cannot establish municipal liability under 42 U.S.C. § 1983, and (3) cannot establish conspiracy under 42 U.SC. §§ 1985 and 1986. *See generally* Town Def. Mem. in Support of Mot. for Summ. J. ("Town Def. Mem."), ECF No. 41.

Defendant EAC separately moves for summary judgment on the grounds that (1) EAC is not a state actor, and so Rodgers' 42 U.S.C. § 1983 claims against EAC must be dismissed, (2) Rodgers cannot establish legally cognizable First and Fourteenth Amendment retaliation claims, (3) Rodgers has not alleged municipal

7

liability, and (4) Rodgers has not provided more than subjective beliefs for his conspiracy claims under 42 U.S.C. §§ 1985, 1986. *See generally* EAC Def. Mem. in Support of Mot. for Summ. J. ("EAC Mem."), ECF No. 48.

Having reviewed the parties' submissions and Rodgers' opposition, as well as the underlying record, the Court finds that Rodgers has not established a *prima facie* case of First Amendment retaliation, that the town is not liable for the alleged harms under 42 U.S.C. § 1983, and that Rodgers does not have viable conspiracy claims under 42 U.S.C. §§ 1985 and 1986. The Court grants Town Defendants' and EAC's motions for summary judgment.

## I. Rodgers has not established a *prima facie* case of First Amendment retaliation, warranting dismissal of his 42 U.S.C. § 1983 claims

The Second Circuit "ha[s] described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Where a plaintiff is a public employee, to establish a *prima facie* case of First Amendment retaliation, the plaintiff must show that "(1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action." *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 317–18 (E.D.N.Y. 2014) (citing *Scott v. Coughlin*, 344 F. 3d 282, 287 (2d Cir. 2003)). In other instances, the plaintiff must show "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d

8

Cir. 2013) (involving First Amendment retaliation claim by private citizen who was not public employee). Though they dispute the extent to which the Town was involved in Rodgers' employment decisions, Rodgers, the Town Defendants, and Defendant EAC each cite the public employee test as the one to assess for Rodgers' First Amendment retaliation claim. *See* Town Def. Mem. at 17; Plf. Opp. to Town Def. Mot. For Summ. J. ("Pl. Opp.—Town") at 19; EAC Mem. at 22. In any event, both tests require a "causal connection" between a defendant's alleged adverse action and the plaintiff's protected speech. *Kohutka*, 994 F. Supp. 2d at 317–18; *Dorsett*, 732 F.3d at 160.

Town Defendants and EAC do not contest that Rodgers meets the first two prongs of the test: Rodgers engaged in protected speech when he spoke as a private citizen at the public redistricting hearing, and his termination is an adverse action. Town Def. Mem. at 17–18; EAC Mem. at 22. Instead, Town Defendants and EAC argue that Rodgers has not shown a "casual connection between his protected speech and the later adverse employment action." Town Def. Mem. at 18; *see also* EAC Mem. at 22. They are correct.

Critically, courts have recognized that causation does not lie where an adverse action (1) occurred before protected speech, or (2) was a continuation of adverse actions preceding the protected speech. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.");

9

*Grennan v. Nassau Cnty.*, No. 04-CV-2158 (DRH) (WDW), 2007 WL 952067, *11 (E.D.N.Y. Mar. 29, 2007) ("Where there is evidence that the employer was considering the adverse employment action before the protected activity, the Supreme Court has held that an employer's proceeding along lines previously contemplated, though not definitively determined, is no evidence whatever of causality." (internal quotation marks omitted)). Thus, courts have rejected First Amendment retaliation claims when the alleged adverse action occurred or began before the protected speech. *Slattery*, 248 F.3d at 95 (plaintiff faced "extensive period of progressive discipline" that began five months prior to protected activity); *Grennan*, 2007 WL 952067, at *11 (though certain adverse actions occurred after protected speech, many precursors occurred before, including request to district attorney to investigate matter involving plaintiff and administratively reassigning plaintiff's job duties); *Harenton Hotel, Inc. v. Village of Warsaw et al.*, No. 12-CV-235S (WMS), 2017 WL 4169342, at *7 (W.D.N.Y. Sept. 20, 2017) ("undisputed record evidence show[ed] that" delay in plaintiff's permitting efforts occurred before protected speech); *see also Musco Propane, LLP v. Town of Wolcott Plan. & Zoning Comm'n*, No. 12-CV-3746, 536 F. App'x 35, 39–40 (2d Cir. 2013) (summary order) (adverse actions, including "formal investigation" into approval of plaintiff's propane storage tank occurred before protected speech).

Here, though Rodgers disputes the level of involvement of Mallette and Rockensies in the decision to terminate him, he does not dispute that a meeting occurred on August 31, 2022 with Town and EAC representatives, and that at that

10

meeting — which occurred before the public redistricting hearing — it was decided that Rodgers would be terminated. *See* Pl. Responses to Town Def. Rule 56.1 Statement ¶¶ 86–87; Pl. Responses to EAC Rule 56.1 Statement ¶¶ 41–42. Rodgers does not dispute that at the August 31, 2022 meeting it was decided that one of his EAC supervisors would inform him the next day, September 1, 2022, that September 30, 2022 would be his last day of employment. Pl. Responses to EAC Rule 56.1 Statement ¶ 42.

Thus, the record and undisputed facts make clear that the decision to terminate Rodgers, and to inform him that he was being terminated, were made prior to the date on which he engaged in the protected speech that is the basis for his First Amendment claim. More than "considering the adverse employment action before the protected activity" and then "proceeding along lines previously contemplated," which would still defeat an inference of causation, Rodgers' employer had "definitively determined" the adverse employment action before his protected speech. *See Grennan*, 2007 WL 952067 at *11. Based on the undisputed facts in the record alone, there "is no evidence . . . of causality." *Id.*

Since Rodgers' protected speech occurred after the August 31, 2022 meeting and after the decision to terminate him, Rodgers would have to point to other protected speech as the basis for the decision to terminate him. Importantly, Rodgers' complaint makes clear that the protected speech that is the object of the alleged retaliation is his speech at the public redistricting hearing. Compl. at 7–8. In any event, Rodgers has not shown any other First Amendment protected speech or

11

conduct that was plausibly the impetus for the decision to terminate his employment. Rodgers makes a series of allegations about Mallette and Rockensies and their political affiliations and claims they are "both beholden to the local Republican party." *See* Pl. Responses to Town Def. Rule 56.1 Statement ¶¶ 13, 15. In his opposition to the Town Defendants' motion, Rodgers further alleges that he promoted an event attended by Governor Hochul in early 2022 and "[s]oon thereafter, the political retaliation began." Pl. Opp.—Town at 10. As the retaliation, Rodgers alleges Rockensies "summoned [him] to a meeting with Rockensies and Mallette to criticize Rodgers' footwear." *Id.* He alleges he had provided medical documentation for an accommodation to the dress code to wear sneakers due to a medical condition. *Id.* Mallette told Rodgers "I'll bring you some black shoe polish and maybe we can color them" at the meeting and subsequently "stopped speaking to Rodgers and made negative facial expressions when he encountered Rodgers in the office." *Id.* at 10–11. There is no evidence provided in the record for Rodgers' implication that Mallette knew that Rodgers promoted an event with Governor Hochul. Indeed, Mallette testified he was unaware Rodgers was involved in such an event. Mallette Tr. 68:19–25. Rodgers "does not dispute that Mallette testified he was unaware" of the event, but alleges without further evidence that "Mallette's actions demonstrate his awareness of Plaintiff's political activities." Pl. Responses to Town Def. Rule 56.1 Statement ¶ 78.

Though the parties dispute the level to which Mallette contributed to the decision to terminate Rodgers' employment, there is no evidence in the record that

12

Rodgers' political affiliation and activities (nor that Mallette's comment about Rodgers' sneakers) had any causal link to his termination. "While doubts must be resolved in favor of the party opposing the motion [for summary judgment], the opposing party must provide 'concrete particulars' showing that a trial is needed, and '[i]t is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to that motion.'" *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *S.E.C. v. Rsch. Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)).

Separate from the temporal proximity between his protected speech and EAC informing him that he was terminated, Rodgers points to Defendants' contention that his position was being terminated due to budgetary reasons as "pretext." Pl. Opp.—Town at 21–22. That argument does not support Rodgers' First Amendment retaliation claim, as the protected activity he alleges — his speech at the public redistricting hearing — occurred after the meeting, and as Rodgers does not provide nonconclusory allegations that another protected activity preceded and caused his termination. In any event, no reasonable jury could find for Rodgers on his claim of pretext given the facts in the record. Rodgers states in support of his argument that as of August 2022, only $447,000 of the $1,025,000 grant had been spent, and so there could not have been a lack of funding that precipitated the decision to terminate one of the two gun violence prevention coordinator positions. Pl. Opp.—Town at 21. However, Rockensies testified that because the budget also included training and supportive services for program participants, costs for certain certifications, and

13

$100,000 contracts for four different vendors, there was only about $70,000 left in the grant for program funding. Rockensies Tr. 54:8–55:16; 82:8–17.

Because Rodgers has failed to establish a *prima facie* First Amendment claim, his 42 U.S.C. § 1983 claims fail, including his municipal liability claim against the Town of Hempstead. A municipal organization faces liability under 42 U.S.C. § 1983 "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)). As the record shows there was no independent constitutional violation as a matter of law, Rodgers has also failed to establish a municipal liability claim against the Town.

## II. Rodgers has not established conspiracy claims under 42 U.S.C. §§ 1985 and 1986

Rodgers alleges that Defendants "conspired to deprive [him] of rights, privileges and immunities secured by the federal constitution" in violation of 42 U.S.C. § 1985. Compl. ¶¶ 70–74. The statute provides that where a party is "injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States" due to the conduct listed in the statute, that party may have an action to recover damages against the conspirators. 42 U.S.C. § 1985(3). Conspiracy claims under the statute also require a plaintiff to allege "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person

14

is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). The record lacks any indication of a conspiracy to deprive Rodgers of equal protection of the laws or equal privileges and immunities under laws. The Court dismisses Rodgers' 42 U.S.C. § 1985 claim.

Rodgers also brings a cause of action under 42 U.S.C. § 1986. Compl. ¶¶ 75–80. That statute provides that people who have knowledge of the harms described in 42 U.S.C. § 1985 that are being conspired to be done and are about to be committed, and who have power to prevent or aid in preventing those wrongs but neglect or refuse to do so, are liable to the person harmed if the wrongful act is committed. 42 U.S.C. § 1986. "However, [42 U.S.C.] § 1985 liability is a necessary predicate to a § 1986 claim." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 208–09 (E.D.N.Y. 2010). Thus, "[if] the Court dismisses plaintiff's conspiracy claims under § 1985 for the reasons discussed *supra*, the Court must also dismiss plaintiff's claims under § 1986." *Id.* at 209.

### III. Rodgers' claims under the First and Fourteenth Amendments must be dismissed

"If an equal protection claim 'merely restate[s] a First Amendment retaliation claim,' . . . 'courts in the Second Circuit have dismissed [the] equal-protection claim[ ]' as duplicative." *McKenna v. Nassau Cnty.*, 23-CV-4286 (ARR) (ST), 2023 WL 8455670, at *4, (E.D.N.Y. Dec 6, 2023) (quoting *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 484 (E.D.N.Y. 2019)). Rodgers has not provided any evidence of a

15

violation of his equal protection rights under the Fourteenth Amendment. In addition, Rodgers' Fourteenth Amendment claim is based on the same allegations as his First Amendment claim. Thus, the Court dismisses Rodgers' Fourteenth Amendment claim as unmeritorious and duplicative. Furthermore, as discussed *supra*, Rodgers has not shown First Amendment retaliation. His claim grounded in the First Amendment in his Third Cause of Action is duplicative of the First Amendment claim he raises under 42 U.S.C. § 1983 and warrants dismissal.

## CONCLUSION

There is no question that Rodgers engaged in speech protected by the First Amendment when he criticized the Redistricting Commission in his comments at a public hearing on August 31, 2022. But Rodgers has not provided any evidence from which a reasonable jury could find that Defendants' earlier decision to terminate Rodgers' temporary, grant-funded position was causally linked to the exercise of his constitutional rights. For the reasons discussed, the Court <u>grants</u> Town Defendants' and EAC's motions for summary judgment.

SO ORDERED.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated:   March 31, 2025
         Brooklyn, NY